Thompson, Barwise & Wharton and Geo. Thompson, Jr., all of Fort Worth, for plaintiff.

PHILLIPS, C. J. The relator prays for a mandamus directed to the members of the Honorable Court of Civil Appeals for the Fifth Supreme Judicial District for the certification to this court of the correctness of their action in the disposition of a certain case to which relator was a party.

The case was originally a suit in the Justice Court, Precinct No. 1, Dallas County, wherein the relator was plaintiff, against certain defendants, and in which on trial in that court relator as plaintiff recovered judgment. One of the defendants sought to appeal to the County Court at Law of Dallas County, but as held by the Court of Civil Appeals did not file his appeal bond within the time prescribed by law. A trial was had in the County Court at Law without its being noticed, apparently, that that court was without jurisdiction on account of the failure to file the appeal bond within the proper time. Judgment was rendered there in favor of the appealing defendant. Thereupon the relator perfected its appeal from this judgment to the Court of Civil Appeals, and in that court, because of the County Court at Law's want of jurisdiction, moved that the Court of Civil Appeals reverse the judgment of the County Court at Law and remand the cause to that court with instructions to dismiss the appeal from the Justice Court. The Court of Civil Appeals, however, did not so dispose of the case. According to its opinion which accompanies the petition for mandamus, it held that the County Court at Law had no jurisdiction of the appeal from the Justice Court, and reversed the judgment of the County Court at Law and dismissed the relator's appeal, the effect of which necessarily was to tax the relator with the costs of the appeal.

On the ground that the jurisdiction of the Court of Civil Appeals was final in the case and that such disposition of it was in conflict with the holdings of other Courts of Civil Appeals, the relator thereupon moved the court to certify the question to this court for determination, and now seeks a mandamus to require such certification.

[1] In accord with the holding of this court in Pecos & N. T. R. Co. v. Canyon Coal Co., 102 Tex. 478, 119 S. W. 294, and Turnbow v. Bryant Co., 107 Tex. 563, 181 S. W. 686, it is held in Ware v. Clark, 58 Tex. Civ. App. 356, 125 S. W. 618; Fort Worth & R. G. R. Co. v. Mathews, 169 S. W. 1052, and in Dupree v. Massey, 180 S. W. 668—decisions by the Courts of Civil Appeals for the Second, Third, and Seventh Districts, respectively, that on the appeal to the Court of Civil Appeals of a cause of which the trial court did not have jurisdiction, the proper practice is not to dismiss the appeal but to reverse the judgment and remand the cause with the direction that it be dismissed. Other decisions of the Courts of Civil Appeals are to the same effect.

[2] The conflict between the holding of the Court of Civil Appeals in its disposition of the present case and these decisions is evident. Since the case is one of which the jurisdiction of the Court of Civil Appeals is final, the mandamus is accordingly awarded.

---

## TERRELL v. SUMMIT PLACE CO.
### (No. 200-3269.)

(Commission of Appeals of Texas, Section B. June 22, 1921.)

**Exchange of property** ⊙⇒8(4)—**Evidence sustaining finding that lot sold had actual number of front feet represented.**

Plaintiff alleging that defendant had fraudulently represented a lot received in exchange to contain 114 feet frontage, when in fact it contained only 98 front feet, *held*, under the evidence, that the lot conveyed in fact the frontage represented, although part thereof was occupied by sidewalk space and private parking.

McClendon, J., dissenting.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by M. W. Terrell against the Summit Place Company. A judgment for plaintiff was affirmed by the Court of Civil Appeals (203 S. W. 1110), but on motion of defendant the judgment was set aside, and judgment rendered for defendant. Plaintiff's motion for a rehearing was overruled (207 S. W. 145), and he brings error. Affirmed.

Barrett & Barrett and Terrell & Terrell, all of San Antonio, for plaintiff in error.

McAskill, Simmang & Mauermann, Leonard Brown, and Taliaferro, Cunningham & Birkhead, all of San Antonio, for defendant in error.

SADLER, P. J. This suit was filed by plaintiff in error September 21, 1915, and was for the recovery from defendant in error of certain sums due for taxes and for the establishment of a lien for the recovery upon certain property theretofore conveyed by plaintiff in error to the Summit Place Company.

On October 2, 1915, by an amended petition, in addition to the action for taxes, plaintiff alleged that he had been damaged in the sum of $960 by reason of a shortage of 16 front feet at $60 per foot in lot 6, block 7, new city block 3261, Summit Place Addition to the city of San Antonio, Tex.,

and charged that the defendant had fraudulently represented said lot to contain 114 feet frontage, when it in fact only contained 98 front feet. It is alleged that lot 6, block 7, was conveyed to the plaintiff August 11, 1913, in part payment for the property theretofore conveyed by plaintiff to the company, and a lien ,was sought to be established against the property thus· by him conveyed, to secure the $960,. with interest from August 11, 1913, at 6 per cent. Plaintiff alleged that this shortage was discovered by him on the 17th day of October, 1913. Defendant answered by general denial.

It appears from the record that at the time of the trial of the cause the tax question had been settled, and that the plaintiff had waived a lien against the property which he had conveyed to the Summit Company; the only question being left for determination having relation to damages for the shortage in lot 6, block 7. Judgment was rendered in favor of the plaintiff for $1,126.24 on June 30, 1916, ,with 6 per cent. interest from date of judgment. The trial was before the court ,without a jury; and, on writ of error to the honorable Court of Civil Appeals, judgment was affirmed. 203 ·S. W. 1110.

On motion of plaintiff in error in the appellate court (defendant in error in the Supreme Court), the former judgment of the Court of Civil Appeals was set aside, and the judgment of the trial court reversed, and rendered for the Summit Place Company, defendant in error here. The motion for rehearing by the defendant in error in the Court of Civil Appeals was overruled (207 S. W. 145), and petition for ,writ of error by the plaintiff in the trial court thereafter granted.

The findings of fact and the conclusions of law by the trial court are as follows.

"1. That on or about August 11, 1913, the Summit Place Company, a corporation by and under the laws of Texas, made an exchange of property with M. W. Terrell, and as a part consideration for his property agreed to 'convey him lot 6 in block 7, on the southeast corner of the intersection of Howard street and Queensborough court, in San Antonio, Bexar county, Tex.

"2. That said property was put in said trade at an agreed valuation of $60 per front foot, and that the Summit Place Company, through its president, Ed Roos, represented that said lot had a frontage on Queensborough court of 114 feet.

"3. That said lot actually had a frontage on said street of only 98 feet, and that said fact was known to the said Ed. Roos, president of said Summit Place Company, at the time he made said representations.

"4. That on or about August 11, 1913, the Summit Place Company executed a deed to M. W. Terrell to said lot 6, and that he settled with them therefor at the agreed valuation of $60 per front foot, for 114 feet.

"5. That at the time of the settlement the said M. W. Terrell did not know that said lot only had a frontage of 98 feet, or that it was claimed that the said sidewalk and parking was a part of said lot, but believed that it had a frontage of 114 feet, as represented.

"6. That said M. W. Terrell was secretary of said Summit Place Company in 1906, but that he was only a nominal stockholder, and had nothing to do with the laying out and platting of said addition, or with the sale of the property, except as secretary of said company to attest the corporate seal and acknowledge the dedication thereof.

"7. That money has been set aside to pay the taxes sued for by plaintiff, and that in order to permit the property on which he claimed a lien to be sold that he waived any lien thereon.

"8. That directly east of and adjoining the said lot is a sidewalk 4 feet wide, and adjoining the sidewalk is a parking 12 feet wide, and that a map showing this has been duly recorded in the deed and plat records of Bexar county, Tex., and that a correct plat showing said lot 6 and adjoining sidewalk, parking, and street, together with -the instrument dedicating the said property, as shown by said map of record, is hereto attached and made a part hereof.

"9. That said sidewalk and parking form no part of said lot 6, but have been dedicated to the public.

"10. That plaintiff has been damaged by the said, false representations in the sum of $960, based on the agreed valuation per front foot for the 16 feet shortage in the width of said lot, with interest thereon from August 11, 1913, at 6 per cent."

### Conclusions of Law.

"1. That the deed from Summit Place Company to M. W. Terrell, conveying said lot 6, block 7, did not vest title in him to the 4 feet sidewalk and the 12-foot parking.

"2. That said sidewalk and parking did not constitute a part of said lot 6.

"3. That said sidewalks and parking were dedicated to the public, and that the purchaser did not have the exclusive use thereof.

"4. That the property line of the said lot began at the sidewalk, and not at the curbing.

"5. That because of the misrepresentations made by the defendant, acting through its duly authorized president, Ed Roos, the plaintiff has been damaged as alleged and is entitled to recover such damages, with interest."

Plaintiff in error presents two· assignments:

1. "The honorable Court of Civil Appeals erred in holding that as a matter of law the lot sold to the plaintiff in error by the defendant in error had a frontage of 114 feet instead of 98 feet as found by the trial court."

2. "The trial court having found that the sidewalks and private parkings indicated upon the map filed by the corporation formed no part of the lot deeded to the plaintiff in error, but had been dedicated to the public, the honorable Court of Civil Appeals erred in holding that to mark a park shown on the map so filed as private parking was negativing the idea that it was public parking, and not dedicated to the public."

The Court of Civil Appeals in its second opinion holds that lot 6 contained a frontage

of 114 feet, and that the representation made by the Summit Company to plaintiff in error was true in fact. It also held that the trial court erred in its conclusion that the sidewalks and private parkings indicated upon the map in evidence formed no part of the lot conveyed to plaintiff in error. .

We have very carefully examined the pleadings, the statement of facts, and the opinion of the Court of Civil Appeals. Our conclusion is that that court has correctly disposed of the case. It is not believed that it is necessary to fortify by further argument the admirable treatment of the question by Judge Moursund in delivering the opinion of the court. However, should any further discussion be necessary, it is our opinion that the deed on its face discloses facts which show beyond controversy that the conveyance to plaintiff in error was of lot 6 inclusive of the sidewalk and parking; and, such being the case, no misrepresentation was made by the defendant in error.

In addition to the reasons given in the opinion of the Court of Civil Appeals, we think that the warranty clause clearly supports the conclusion there reached. It is:

"And the Summit Place Company does hereby bind itself, its successors, and assigns to warrant and forever defend, all and singular the said premises upon the terms and conditions hereinbefore stipulated unto the said M. W. Terrell," etc.

Now, had it not been the purpose of the conveyance to pass the title to the whole of lot 6, inclusive of sidewalks and parking, why the necessity of limiting the terms of the warranty? This warranty, properly construed, covers entire lot 6 as shown on the plat of Summit Addition, to which reference is made in the deed to assist in the description. We have no question but that, when properly considered, the plat clearly contemplates that the outside boundaries of lot 6, block 7, in question are indicated by the black lines segregating the different quantities of land in the block into lots, and that it shows lot 6 to be 114 feet wide, facing on Queensborough court, by 154.17 feet deep.

It is true that the plat shows the impressment upon the lot in question of a parking and sidewalk adjacent to the streets upon which it abuts. But the deed itself, under which plaintiff holds, clearly gave him notice of these impressments, and also of the fact that the grantor was protecting itself against a general warranty on account of these impressments on the lot conveyed.

Why the necessity of making any reservation in the deed with reference to the sidewalk and private parkings, and why the necessity of making any reservation in the warranty as to these conditions and terms and reservations, if the deed only conveyed

that portion of the lot, and if the grantor and grantee did not understand that these impressments were upon the property which the grantor was selling and which the grantee was buying? Such reservations are foolish, useless, can have no meaning whatever, can serve no purpose, if the conveyance was only of that portion of the lot exclusive of the sidewalk and private parking.

Again, the plat is believed to clearly show that the lot in question is inclusive of the sidewalk and the parkings. The lots abutting on San Pedro avenue show that their complement of frontage on their respective front streets and their depth are bounded by the black lines marking their extent. The parking on San Pedro avenue is shown to be excluded from the lots abutting on that parking. Each of these lots has its complement of frontage as called for by the plat without encroaching upon the parking that abuts San Pedro avenue. The sidewalks, however, are clearly shown to be impressed upon the lots. This same condition is apparent as to the lots abutting on McCullough avenue. The parkings on this avenue do not form part of the lots abutting thereon, but the sidewalks are impressed upon the lots proper. Each lot has its complement of feet by inclusion of the sidewalks, but excluding the parkings that abut on McCullough avenue.

The measurements indicated on the plat applying to blocks 1 and 2 show conclusively the correctness of the above position. From the monument marking the center of Howard street to the one showing the center of McCullough avenue, the distance is given as 1,193 feet. By adding half the width of Howard street, 19.5 feet, the distance from the outside boundary of the sidewalk on the outside boundary of the sidewalk on McCullough avenue to the center of that avenue 27.8 feet, and the respective frontages given to the lots as defined by the black boundaries, we have 1,193.0 feet. Take the whole distance from the center of Belknap to the center of Howard street, 588.5 feet, and it is found to comprehend half of Belknap, 13 feet, half of Howard, 19.5 feet, and the complement of feet given each lot facing Queensborough Court, as indicated on the plat and defined by the black lines. This shows that it was intended by the plat to exclude only those parkings indicated as excluded by black lines, and which front on San Pedro and McCullough streets, respectively. All other parkings are parts of the lot, necessary to give to each lot its complement in front feet on its respective street. Any other view would do violence to the indicated purpose of the plat. By reference in the deed, this map, with its ultimate effect, became part of the conveyance, and charged plaintiff in error with knowledge of the facts.

Being, therefore, of the opinion that there is no error in the judgment of the Court of Civil Appeals, we recommend its affirmance.

McCLENDON, J., dissenting.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

PHILLIPS, C. J., not sitting.

─────────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes